
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

# IN THE MATTER OF THE GUAM BAR ASSOCIATION

Supreme Court Case No.: SPR23-001

## OPINION

## Cite as: 2024 Guam 5

Petition for Review
Argued and submitted on February 26, 2024
Hagåtña, Guam

Appearing for Petitioners Guam Bar
Association Members:
Bar Members and
Jordan Lawrence Pauluhn, *Esq.* (argued)
Guam Memorial Hospital Authority
850 Gov. Carlos G. Camacho Rd.
Tamuning, GU 96913

Appearing for Respondent Board of
Governors of the Guam Bar Association:
Vincent C. Camacho, *Esq.*
Camacho Calvo Law Group LLC
356 E. Marine Corps Dr., Ste. 201
Hagåtña, GU 96910


**E-Received**
11/5/2024 10:34:35 AM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**PER CURIAM:**

**[1]** Petitioning members[1] of the Guam Bar Association ("GBA") request we modify or overrule five of the thirty-one amendments to the GBA By-Laws (the "By-Laws") passed by a majority of GBA members at a special election. The five amendments Petitioners challenge are Amendments 1 and 3, which create a new membership class in the GBA; Amendment 6, which adds residency and durational requirements for individuals serving in GBA Board positions; Amendment 7, which changes how GBA financial statements are prepared; and Amendment 12, which adopts a finality rule for GBA elections.

**[2]** We approve Amendment 6, modify Amendment 7, and disapprove Amendments 1, 3, and 12.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**[3]** The GBA held a special election for members to vote on thirty-one proposed amendments to its By-Laws. Before the special election, Respondents GBA Board of Governors (the "Board") issued a notice of proposed amendments to the By-Laws and notice of election. The notice satisfied the minimum ten-day advance-notice requirement of GBA Rule 7 § 1 and included the current By-Laws, the proposed amendments, information about the date and location of the election, and a sample ballot. The Board also sent two reminder notices of the special election.

---

[1] Sean Brown, James L. Canto II, Richelle Y. Canto, Edwin Ching, Seth Forman, Carol M. Hinkle-Sanchez, Robert Klitzkie, Donna E. Lawrence, Jeremiah B. Luther, Monty R. May, Sandra Cruz Miller, Alisha Molyneux, Katherine M. Nepton, Grant Olan, Jordan Lawrence Pauluhn, David Rivera, Thomas Lynn (Tim) Roberts, Gloria Ann Lujan Rudolph, Peter J. Santos, Tyler R. Scott, Matthew Shuck, Heidi E. Simpson, Jay Matthew Strader, Jessica Toft, Robert M. Weinberg, Matthew E. Wolff, Patrick Wolff, and Marianne Woloschuk.

**[4]** After the special election, the Board counted the ballots and filed a certification of results with this court, certifying that a majority vote of the active membership approved the thirty-one proposed amendments to the By-Laws. This petition for review timely followed.

**[5]** The Board's response to the petition for review argues that the Petitioners lack sufficient grounds to challenge the election results. The Board asserts they followed all Rules and By-Laws of the GBA in conducting the election, and, since the proposed amendments were approved by a majority of the GBA members, the petition should be dismissed.

**[6]** Upon receipt of the petition for review, we issued a stay on the implementation of all thirty-one amendments. Order (Sept. 11, 2023). After oral argument, we lifted the stay on the twenty-six uncontested amendments. Order (Mar. 21, 2024).

## II. JURISDICTION

**[7]** This court has jurisdiction to "govern attorney . . . ethics and the practice of law in Guam, including admission to practice law and the conduct and discipline of persons admitted to practice law." 48 U.S.C.A. § 1424-1(a)(7) (Westlaw through Pub. L. 118-106 (2024)); *see also* 7 GCA § 9101 (2005) ("The Supreme Court shall have the power to govern attorney . . . ethics, admission to, expulsion from and governance of a Guam bar association; and shall promulgate rules to effectuate that power.").

## III. STANDARD OF REVIEW

**[8]** This court is the governing body of the GBA and all Guam attorneys. 48 U.S.C.A. § 1424-1(a)(7); 7 GCA §§ 9101, 9102 (2005). Under its statutory and inherent power, this court adopted the GBA Rules and By-Laws. *See* 48 U.S.C.A. § 1424-1(a)(7); 7 GCA § 9101; Guam Bar Ass'n R., Preamble. While we allow the GBA to adopt, amend, or repeal By-Laws consistent with the GBA Rules, we retain the ultimate authority to review their actions:

> The action of the members of the GUAM BAR ASSOCIATION with respect to the By-Laws shall be certified to and filed with this Court, and may be subject of a petition for review to be filed with this Court within thirty (30) days after such filing, or may be reviewed by the Court on its own motion. . . . This Court may consider the petition for review in such manner as it deems proper and may approve, modify or disapprove the action under review.

Guam Bar Ass'n R. 7 § 1. "For cases brought before this court pursuant to our original jurisdiction, all issues are determined in the first instance." *In re Request of Leon Guerrero*, 2021 Guam 6 ¶ 20 (per curiam) (citation omitted).

## IV.  ANALYSIS

### A.  The Election Was Procedurally Proper

[9]     In our previous order, we concluded there were no procedural flaws in the special election that would require us to overrule the results. Order (Mar. 21, 2024). We stand by that analysis and only summarize our conclusions here. First, we rejected the argument that the GBA Board should have included the vote tallies when certifying the election results to this court. *Id.* at 2. There is no explicit or implicit requirement in the GBA Rules or By-Laws that a tally of the votes be presented along with the election results. Next, we rejected Petitioners' claim that the election was improperly certified because a substantive error was silently corrected after the draft of the proposed amendments was circulated. *Id.* We concluded that the omission of the word "Governors" from the phrase "Board of Governors" was a *de minimis* error that did not require a new election. *Id.* Finally, we rejected Petitioners' argument that a notice-and-comment period on the proposed amendments was required before the election. *Id.* We concluded that neither the GBA Rules nor By-Laws require a notice-and-comment period, and we declined to order one in this case. *Id.* We approved the uncontested amendments; reserved judgment on Amendments 1, 3, 6, 7, and 12; and retained jurisdiction to issue a written opinion. *Id.* We now act on the amendments we did not previously address.

**B. We Disapprove Amendment 1 Because It Would Create a Third Class of Membership Inconsistent with the GBA Rules**

[10]     Amendment 1 would create a new class of membership for temporary active attorneys ("government attorneys")[2] within the GBA.  The current By-Law and Amendment 1 are set forth side by side below:

| Current By-Law | Amendment 1 |
|---|---|
| ARTICLE I MEMBERS<br><br>Section 1.  ACTIVE AND INACTIVE MEMBERS, REGISTRATION.<br><br>The Board of Governors shall cause to be maintained a registry of active and inactive members in accordance with the GUAM BAR ASSOCIATION Rules. . . . | ARTICLE I MEMBERS<br><br>Section 1.  ACTIVE, **TEMPORARY ACTIVE** AND INACTIVE MEMBERS, REGISTRATION.<br><br>The Board of Governors shall cause to be maintained a registry of active, **temporary active,** and inactive members in accordance with the GUAM BAR ASSOCIATION Rules. . . . |

[11]     The Guam Rules Governing Admission to the Practice of Law ("Admission Rules") allow attorneys licensed in another state or territory of the United States to practice for a temporary period in Guam without having to take and pass the Guam bar exam.  Admission Rule 3.01(e).[3] These attorneys are allowed to practice in Guam as a "government attorney" for five years, which period may be extended.  *Id.*  The Admission Rules refer to these attorneys as "temporary active" members of the GBA, and under the current rules adopted by this court, there are no distinguishing differences within the GBA between "government attorneys" and attorneys who have passed the

---

[2] Although our rules governing admission to the practice of law also permit employees of Guam Legal Services Corporation and the Guam office of the Micronesian Legal Services Corporation to apply for temporary active status, both the Petitioners and the Respondent use the shorthand "government attorneys."  *See* Admission Rule 3.01(e).  We follow the parties' convention and refer to attorneys admitted to practice on temporary active status as government attorneys, noting that employees of these legal service corporations are perhaps not technically "government" employees.

[3] After the filing of this petition for review, this court adopted a new Rule 9.03 of the Admission Rules, granting yet another avenue for lawyers to be temporarily admitted to practice in Guam without taking the Guam bar exam.  *See* Promulgation Order No. 06-007-15 (Aug. 30, 2024) (adopting a Temporary License of Spouse of a Military Servicemember rule).  Attorneys admitted under this new rule would similarly have temporary active status such as those admitted under Rule 3.01(e).  For purposes of this opinion, the term "government attorneys" includes those lawyers who may be admitted under Rule 9.03.

Guam bar exam. *See id.* Specifically, the GBA Rules group temporary active attorneys and attorneys who have passed the Guam bar exam in the same category: they are active members. *See* Guam Bar Ass'n R. 2 § 2. It was never the intention of this court to create three classes of attorneys in Guam. Attorneys who have passed the bar exam in other jurisdictions and are practicing in Guam under a temporary license are held to the same standards of professional conduct and are subject to the same rules of discipline as attorneys who have passed the Guam bar exam. Therefore, we conclude that attorneys who are temporarily admitted to practice in Guam should have the same privileges as attorneys who pass the bar exam in Guam.

[12] The GBA assists this court with the governance of attorneys in Guam, but its power to do so is limited by the GBA Rules. "ByLaws *not inconsistent* with these Rules may be adopted, amended or repealed by the active members in good standing voting by ballot, or at a regular meeting or special meeting of the members." Guam Bar Ass'n R. 7 § 1 (emphasis added). Thus, we will not approve amendments to the By-Laws that are inconsistent with the rules we have enacted. *See* Guam Bar Ass'n R. 10 § 1. The GBA Rules provide that "[m]embership in the [GBA] shall consist of two classes: Active and Inactive." Guam Bar Ass'n R. 2 § 2. "Members who are not engaged in the practice of law in this territory, or who are judges or in the military service may be inactive members at their election." *Id.* "[A]ll other members" shall be active members. *Id.* Amendment 1 would create a third class of membership within the GBA of temporary active attorneys who would not have the same privileges as active members. This By-Law amendment is inconsistent with the GBA Rules. Accordingly, we disapprove Amendment 1.

//

//

//

**C. We Disapprove Amendment 3 Because It Is Inconsistent with the GBA Rules**

**[13]**      Amendment 3 is related to Amendment 1 and would allow temporary active attorneys to be counted toward a quorum for GBA meetings.  The current By-Law and Amendment 3 are set forth side by side below:

| Current By-Law | Amendment 3 |
|---|---|
| ARTICLE II MEETINGS OF MEMBERS<br><br>Section 2.  QUORUM.<br><br>A quorum shall consist of twenty-five percent of the active membership of the GUAM BAR ASSOCIATION in good standing. | ARTICLE II MEETINGS OF MEMBERS<br><br>Section 2.  QUORUM.<br><br>A quorum shall consist of twenty-five percent of the **Active and Temporary Active** membership of the GUAM BAR ASSOCIATION in good standing. |

**[14]**      As discussed above, the Admission Rules provide a pathway for attorneys licensed in other jurisdictions to practice in Guam as government attorneys for a limited period without the need to pass the Guam bar exam.  Amendment 3 allows "temporary active" members to count toward a quorum at a meeting, but these members are otherwise excluded from the rights enjoyed by the other active members of the Guam bar.  This exclusion stems from the proposed creation of a new class of membership and the purposeful omission of this class in the other By-Laws that give rights only to "active members."  Were Amendments 1 and 3 to take effect, temporary active members would not be permitted to be nominated for or to serve in any of the Board or delegate positions, and they would be ineligible to vote.

**[15]**      Under the GBA Rules, all members engaged in the practice of law in Guam are active members.  *See* Guam Bar Ass'n R. 2 § 2.  The only distinction among members made in the rules is between (1) "inactive members," i.e., "[m]embers who are not engaged in the practice of law in this territory, or who are judges or in the military service" and who elect an inactive membership status, and (2) "active members," who are "all other members."  *Id.*  The GBA Rules evince a longstanding policy that all attorneys engaged in the active practice of law in Guam should enjoy

the same rights and be held to the same responsibilities. For instance, prior to this court assuming the exclusive authority to govern the practice of law, *see* 7 GCA §§ 9101, 9102, the statute providing for temporary admission for government attorneys stated: "While admitted under this section, a person shall be classified as an active member of the Bar of Guam *with all the responsibilities and privileges thereof.*" 7 GCA § 9A114 (2005) (emphasis added). Because Amendment 3 (along with Amendment 1) would continue to allow "temporary active" members to count toward a quorum at a meeting but strip them of all other privileges, this amendment to the By-Laws is inconsistent with the Rules of the GBA. Accordingly, we disapprove Amendment 3.

## D. We Approve Amendment 6, Which Adds Residency and Durational Requirements for GBA Officers

[16]     Amendment 6 would add a Guam residency requirement for all candidates for Board office and would specifically require that candidates for Board President be active members of the Guan bar for a minimum of five years prior to nomination. Petitioners argue that the residency and durational requirements would impede members' constitutional right to travel. Pet'rs' Reply Br. at 11 (Oct. 19, 2023). The current By-Law and Amendment 6 are set forth side by side below:

| Current By-Law | Amendment 6 |
| --- | --- |
| ARTICLE IV OFFICERS | ARTICLE IV OFFICERS |
| Section 1. PRESIDENT, VICE-PRESIDENT, SECRETARY, TREASURER. | Section 1. PRESIDENT, VICE-PRESIDENT, SECRETARY, TREASURER. |
| The officers of the GUAM BAR ASSOCIATION shall consist of a President, a Vice-President, a Secretary, and a Treasurer. | The officers of the GUAM BAR ASSOCIATION shall consist of a President, a Vice-President, a Secretary, and a Treasurer. **All officers shall be residents of Guam. The President shall be an Active Member of the Guam Bar Association for a minimum of five years immediately preceding the nomination for office.** |

[17]     "The constitutional basis of the right of travel is said to rest on a variety of constitutional provisions, including the Privileges and Immunities Clause of Article IV, § 2 of the Constitution,

the Privileges and Immunities Clause of the 14th Amendment, and the Due Process Clause of the Fifth Amendment." 16B Am. Jur. 2d *Constitutional Law* § 658 (Aug. 2024 Update). The Organic Act's bill of rights extends all three of these provisions to Guam so that they "have the same force and effect [in Guam] as in the United States or in any State of the United States . . . ." 48 U.S.C.A. § 1421b(u). We therefore conclude that Congress has extended the constitutional right to travel to Guam. *Cf. Barnard v. Thorstenn*, 489 U.S. 546, 552-60 (1989) (invalidating Virgin Islands' rule limiting bar admission based on durational residency requirement).

[18]    However, "[w]hile all citizens enjoy a federal constitutional right to travel from state to state, that right is not absolute and may be reasonably restricted in the public interest." *People v. Relkin*, 211 Cal. Rptr. 3d 879, 885 (Ct. App. 2016) (citing *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969); *In re White,* 158 Cal. Rptr. 562 (Ct. App. 1979)). Generally, "[p]roper invocation of the right to travel would require the [government] to show a compelling justification, rather than simply a rational basis, for its rule." *Salibra v. Supreme Court of Ohio*, 730 F.2d 1059, 1064 (6th Cir. 1984). But the U.S. Supreme Court has "been careful to distinguish . . . durational residence requirements from bona fide residence requirements." *Martinez v. Bynum*, 461 U.S. 321, 325 (1983). "A bona fide residence requirement, appropriately defined and uniformly applied," furthers substantial state interests and "does not burden or penalize the constitutional right of interstate travel." *Id.* at 328.

[19]    On the other hand, a more exacting standard is applied to durational residence requirements involving certain interests. *Dunn v. Blumstein*, 405 U.S. 330, 335 (1972) ("[W]e conclude that the State must show a substantial and compelling reason for imposing durational residence requirements."). However, this standard has been applied only to cases involving the denial of vital benefits, fundamental rights, or basic life necessities. *See Salibra*, 730 F.2d at 1065 (quoting

*Califano v. Torres*, 435 U.S. 1, 4 (1978); *Beil v. City of Akron*, 660 F.2d 166, 169 (6th Cir. 1981); *Hayes v. Bd. of Regents*, 495 F.2d 1326, 1328 (6th Cir. 1974)). "Although any durational residence requirement impinges to some extent on the right to travel," such a requirement is not "per se unconstitutional." *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 256 (1974). Likewise, "[e]ven state regulation of the practice of law which may inhibit travel does not per se constitute a constitutional violation." *Salibra*, 730 F.2d at 1065 (citing *Lowrie v. Goldenhersh*, 716 F.2d 401, 412–13 (7th Cir. 1983); *Hawkins v. Moss*, 503 F.2d 1171, 1179 (4th Cir. 1974); *Moore v. Supreme Court of South Carolina*, 447 F. Supp. 527, 531 (D.S.C. 1977), *aff'd*, 577 F.2d 735 (4th Cir. 1978)). Significantly, the U.S. Supreme Court has distinguished between durational requirements that impermissibly restrict the practice of law, *Barnard*, 489 U.S. at 553, from those that further a compelling state interest in imposing a substantial pre-election residence requirement for lawyers who are candidates for elected office, *see Hadnott v. Amos*, 320 F. Supp. 107, 119 (M.D. Ala. 1970), *aff'd*, 401 U.S. 968 (1971), *and aff'd*, 405 U.S. 1035 (1972).

[20]     The residency requirement of Amendment 6 applies to candidates for all Board positions, in addition to requiring that candidates for Board President be active members of the Guam bar for a minimum of five years immediately preceding nomination. Because we disapprove the amendments that would have made temporary active attorneys a third class of bar members, the potential harm of requiring that candidates for Board President be "active members" for five years is substantially lessened.[4] The Board argues that "[c]ontinued and consistent presence is critical to stable and efficient administration, policy-making, and decision-making." Resp't's Br. at 11

---

[4] We note that attorneys admitted as temporary active members are disproportionally recent arrivals in Guam. Because we disapprove Amendments 1 and 3, we conclude the concerns raised by Petitioners that the residency requirement "runs a substantial risk of being applied in a biased or xenophobic manner" have been ameliorated. Any risk of bias and exclusion under the By-Laws as amended by this opinion is insubstantial.

(Oct. 3, 2023). The Board argues that given the President's "heavier duty and involvement in the Bar Association's operation," holding candidates to a higher standard is justified. *Id.* at 12.

[21] We hold that the residency requirement for all candidates for Board offices is a bona fide residence requirement, which furthers substantial government interests and does not burden the constitutional right of interstate travel. *See Martinez*, 461 U.S. at 328–29. Furthermore, even assuming the requirement that candidates for Board President be active members of the Guam bar for five years were a durational residency requirement,[5] compelling interests would justify its imposition. *Cf. Howlett v. Salish & Kootenai Tribes of Flathead Rsrv., Mont.*, 529 F.2d 233, 244 (9th Cir. 1976) ("The Tribes have a great interest in promoting serious and knowledgeable candidates for Tribal Council positions, and in providing the electorate with the opportunity to observe and acquire first-hand knowledge of prospective candidates. These goals can only be achieved through the imposition of substantial durational residency requirements."); *see also* 7 GCA § 3109(c) (2005) (imposing durational residency and active-practice-of-law requirements for judicial appointees).

[22] The GBA Rules give the Board deference to create By-Laws governing the Board election process. The GBA is run by the Board of Governors, which includes officer positions of President, Vice President, Secretary, Treasurer, and immediate past President. Guam Bar Ass'n R. 3 § 2. This court has given the GBA the authority to determine how those officers are nominated and elected. Guam Bar Ass'n R. 3 § 4 ("The By-Laws shall provide for all nominations and elections of such members of the Board of Governors."). Therefore, since Amendment 6 does not impact

---

[5] We place little merit on the validity of this proposition. *See, e.g.*, *Nat'l Ass'n for the Advancement of Multijurisdiction Prac. v. Berch*, 773 F.3d 1037, 1046 (9th Cir. 2014) ("The cases cited by Plaintiffs stand only for the proposition that bar admission rules that impose *residency requirements* on bar applicants violate the Privileges and Immunities Clause. The AOM Rule, on the other hand, relies solely on state of bar admission, and applies equally to residents and non-residents of Arizona."). Nothing in the amendment seems to indicate that an attorney residing in a different jurisdiction who has been a member of the Guam bar on active status for over five years would not be eligible as a candidate after establishing bona fide residency in Guam.

the constitutional right to travel and is not inconsistent with the GBA Rules, Amendment 6 is approved.

**E. We Approve, with Modification, Amendment 7, Regarding the Preparation of GBA Financial Statements**

[23]    Amendment 7 would change the preparation of the GBA's yearly financial statement, which the current By-Laws require a Certified Public Accountant ("CPA") to prepare. However, Amendment 7 would allow the statement to be prepared by a non-CPA if a CPA supervises the preparation. The current By-Law and Amendment 7 are set forth side by side below:

| **Current By-Law** | **Amendment 7** |
|---|---|
| ARTICLE VIII THE TREASURER, FINANCE | ARTICLE VIII THE TREASURER, FINANCE |
| Section 5.  FINANCIAL STATEMENT. | Section 5.  FINANCIAL STATEMENT. |
| Annually and as of the end of each fiscal year, a Financial Statement shall be made by an independent certified public accountant, selected by the Board of Governors, of all the funds, property and accounts of the GUAM BAR ASSOCIATION.  The Financial Statement shall be delivered to the Board of Governors and made available to the membership for their consideration. | Annually and as of the end of each fiscal year, a Financial Statement shall be **supervised** by an independent certified public accountant, selected by the Board of Governors, of all the funds, property and accounts of the GUAM BAR ASSOCIATION.  The Financial Statement shall be delivered to the Board of Governors and made available to the membership for their consideration. |

[24]    The Board states the purpose of the amendment is to reduce the GBA's operating costs. Resp't's Br. at 14.  According to the Board, this amendment was recommended by the GBA's current CPA.  *Id.*  The Board argues that the integrity of financial documents can still be upheld by other qualified professionals with CPA supervision while saving costs for the GBA.  *Id.*

[25]    The American Institute of Certified Public Accountants ("AICPA") is the national organization that governs the testing and ethics of CPAs.  Its Code of Professional Conduct states that "[d]ue care requires a [CPA] to plan and supervise adequately any professional activity for which he or she is responsible."  AICPA Code of Prof'l Conduct 0.300.060.06 (Principles of Prof'l

Conduct).  Similarly, Guam accountants can face revocation or suspension of their CPA license if they violate professional standards even in a supervisory role.  *See* 25 Guam Admin. R. & Reg. § 2107(a)(5)(F) (2016).  Thus, even if a CPA is only supervising the preparation of annual financial statements, they are still held to a high standard in their supervision.

[26]    The Petitioners' main point of contention with this amendment is that it could lessen the integrity of the GBA's finances and put it at risk for potential financial crimes.  Pet'rs' Br. at 10 (Sept. 5, 2023).  We find that the integrity of the financial statements remains intact so long as there is a CPA who remains involved in a supervisory capacity.  However, the language of the proposed amendment regarding the CPA's supervisory role could be made clearer.  Therefore, we approve the amendment with a modification to provide additional clarity.  Article VIII § 5 of the GBA By-Laws is amended to read as follows, with alterations indicated below:

> Annually and as of the end of each fiscal year, **the preparation of** a Financial Statement **of all the funds, property and accounts of the GUAM BAR ASSOCIATION** shall be ~~made~~ **supervised** by an independent certified public accountant, selected by the Board of Governors~~, of all the funds, property and accounts of the GUAM BAR ASSOCIATION~~.  The Financial Statement shall be delivered to the Board of Governors and made available to the membership for their consideration.

The amended language clarifying that the *preparation* of financial statements shall be supervised by an independent CPA—with the same ethical and professional obligations, albeit in a supervisory capacity—ensures the financial integrity of those statements.  We approve Amendment 7, with the modifications discussed above.

## F. We Disapprove Amendment 12 Because It Is Inconsistent with GBA Rules and Undermines this Court's Authority

[27]    Petitioners argue that Amendment 12 would create a "finality rule" for "all elections other than those for the Board of Governors."  Pet'rs' Br. at 11 (citing Am. 12).  The current By-Law and Amendment 12 are set forth side by side below:

| Current By-Law | Amendment 12 |
|---|---|
| ARTICLE IX NOMINATIONS AND ELECTIONS | ARTICLE IX NOMINATIONS AND ELECTIONS |
| Section 6.  RECOUNT. | Section **5**.  RECOUNT. |
| Any candidate dissatisfied with the result of the count as to his election may, prior to adjournment of the annual meeting, request a recount of the ballots pertaining to his election by filing such a request in writing with the secretary of the meeting.  The President shall forthwith appoint a Recount Committee (which shall be composed of persons different from the Election Committee), and designate the chairman thereof.  The Recount Committee shall, as soon as practicable; (a) recount the ballots pertaining to all elections in which a recount has been requested and examine the envelopes containing ballots not counted, such ballots, as determined by the Committee; (b) determine the number of votes validly cast for each candidate in such election; and (c) report the results to the annual meeting.  The results determined by the Recount Committee shall be final and not subject to further challenge. | Any candidate dissatisfied with the result of the count as to his election may, prior to adjournment of the annual meeting, request a recount of the ballots pertaining to his election by filing such a request in writing with the secretary of the meeting.  The President shall forthwith appoint a Recount Committee (which shall be composed of persons different from the Election Committee), and designate the chairman thereof.  The Recount Committee shall, as soon as practicable; (a) recount the ballots pertaining to all elections in which a recount has been requested; (b) determine the number of votes validly cast for each candidate in such election; and (c) report the results to the **Board of Governors**.  The results determined by the Recount Committee shall be final and not subject to further challenge.  **All other elections other than the results for election to the Board of Governors shall be final and not subject to further challenge.** |

[28]     Petitioners argue that the amendment conflicts with this court's authority to govern the practice of law in Guam.  Pet'rs' Br. at 11.  The Board claims this amendment does not impose a finality rule or take any power of oversight away from this court.  Resp't's Br. at 13.  Instead, the Board argues the amendment was proposed to cut down on frivolous recount requests and, based on a reading of the other rules, applies only to recounts.  *Id.* at 14.

[29]     Whether we are interpreting a statute or a rule, "the same canons of construction apply," and our "starting point" is "the plain language of the rule."  *Topasna v. Gov't of Guam*, 2021 Guam 23 ¶¶ 9-10.  A written provision is ambiguous when it is "susceptible to two or more reasonable interpretations."  *See In re D.S.*, 2023 Guam 13 ¶ 35 (collecting cases).

**[30]**     The language of this amendment is not plainly limited just to recounts.  On its face, the language "All other elections other than the results for election to the Board of Governors shall be final and not subject to further challenge" seems applicable to all elections other than for Board positions.  *See* Am. 12.  At best, the language of Amendment 12 is ambiguous because it is susceptible to at least two reasonable interpretations.  *See In re D.S.*, 2023 Guam 13 ¶ 35.

**[31]**     GBA Rule 7 provides that amendments to the By-Laws made by ballot may be the subject of a petition for review filed with this court or may be reviewed by this court on its own motion.  Guam Bar Ass'n R. 7 § 1.  However, Amendment 12 can reasonably be interpreted to mean that changes made to the By-Laws by ballot, and all other non-Board elections, are "final and not subject to further challenge."  Am. 12.  The language in Amendment 12 seems to undermine this court's authority to review changes to the By-Laws.  This would be inconsistent with GBA Rule 7 and this court's inherent power to govern the practice of law in Guam.  Because the proposed By-Law amendment is ambiguous and not plainly limited to recounts only, we disapprove Amendment 12.

## V.  CONCLUSION

**[32]**     We approve Amendment 6 and the modified language of Amendment 7 to the GBA By-Laws, to take effect immediately.  We disapprove Amendments 1, 3, and 12 to the GBA By-Laws.


| /s/ | /s/ |
|---|---|
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
ROBERT J. TORRES
Chief Justice